Sep 23, 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **19-80170-CR-ALTMAN/BRANNON**

18 U.S.C. § 1349
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

JOHN AGBI,

      Defendant.
_____/

## INFORMATION

The United States Attorney charges:

### GENERAL ALLEGATIONS

At all times material to this Information:

#### The Medicare Program

1. The Medicare Program ("Medicare") was a federal healthcare program that provided free or below-cost health care benefits to individuals who were sixty-five years of age or older, or disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency the Center for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. Medicare was subdivided into multiple program "parts." Medicare Part A covered

health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME"), such as orthotic devices and wheelchairs.

### Durable Medical Equipment

4. Orthotic devices were a type of DME that included rigid and semi-rigid devices, such as knee braces, back braces, shoulder braces, and wrist braces (collectively, "braces").

5. DME companies, physicians, and other healthcare providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A healthcare provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

6. Enrolled Medicare providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers were required to abide by the Anti-Kickback Statute and other laws and regulations. Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

7. Medicare reimbursed DME companies and other healthcare providers for services and items rendered to beneficiaries. To receive payment from Medicare, providers submitted or

2

caused the submission of claims to Medicare, either directly or through a billing company.

8. A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

9. A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment of the beneficiary's illness or injury and prescribed by a licensed physician.

### Telemedicine

10. Telemedicine provided a means of connecting patients to doctors by using telecommunications technology, such as the internet or the telephone, to interact with a patient.

11. Telemedicine companies provided telemedicine services to individuals by hiring doctors and other health care providers. Telemedicine companies typically paid doctors a fee to conduct consultations with patients. In order to generate revenue, telemedicine companies typically either billed insurance or offered a membership program to customers.

12. Medicare Part B covered expenses for specified telehealth services if certain requirements were met. These requirements included: (a) that the beneficiary was located in a rural or health professional shortage area; (b) that the services were delivered via an interactive audio and video telecommunications system; and (c) that the beneficiary was at a practitioner's office or a specified medical facility – not at a beneficiary's home – during the telehealth

consultation with a remote practitioner.

13. Telemedicine membership programs generate revenue for telemedicine companies from customers who: (a) sign a contract with the telemedicine company; (b) pay a set dollar amount per month; and (c) pay a set dollar amount each time the customer has a telehealth encounter with a physician.

### The Defendant, Related Entity, and Other Individuals

14. Defendant **JOHN AGBI** was a resident of Wellington, Florida and a medical doctor licensed in the state of Florida to practice medicine.

15. Company 1 was a purported telemedicine company doing business in Pompano Beach, Florida.

16. Individual 1 was the owner and operator of Company 1.

17. Individual 2 was the office manager of Company 1.

### CONSPIRACY TO COMMIT HEALTH CARE FRAUD
### (18 U.S.C. § 1349)

From in or around August 2018, and continuing through in or around April 2019, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**JOHN AGBI,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly, combine, conspire, confederate, and agree with Individual 1, Individual 2, and others known and unknown to the United States Attorney to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent

pretenses, representations, and promises, money and property owned by, and under the custody and control of, said healthcare benefit program, in connection with the delivery of and payment for healthcare benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

1. It was a purpose of the conspiracy for defendant **JOHN AGBI** and his co-conspirators to unlawfully enrich themselves by, among other things: (a) signing doctors' orders for medically unnecessary DME in exchange for kickbacks and bribes from Company 1; (b) causing the submission of false and fraudulent claims for medically unnecessary DME to Medicare; and (c) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### Manner and Means of the Conspiracy

The manner and means by which defendant **JOHN AGBI** and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

2. Defendant **JOHN AGBI** certified to Medicare that he would comply with all Medicare rules and regulations, and federal laws, including that he would comply with the federal Anti-Kickback statute.

3. Defendant **JOHN AGBI** signed doctors' orders for DME regardless of medical necessity, in the absence of a pre-existing doctor patient relationship, without a physical examination, based solely on a brief telephonic conversation with the Medicare beneficiary or,

frequently, without any conversation with the Medicare beneficiary.

    4.    **JOHN AGBI** and his co-conspirators caused the submission of false and fraudulent claims to Medicare in the approximate amount of $7,564,811 for DME that was medically unnecessary and for which doctors' orders were procured through the payment of kickbacks and bribes.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE
### (18 U.S.C. § 982)

    1.    The allegations of this Information are re-alleged and incorporated by reference as though fully set forth herein for purposes of alleging forfeiture to the United States of certain property in which the defendant has an interest.

    2.    Upon conviction of the violation of Title 18, United States Code, Section 1349, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7). The property subject to forfeiture is $150,000, which the United States will seek as a forfeiture money judgment.

    3.    If any of the property described above, as a result of any act or omission of a defendant:

        a.    cannot be located upon the exercise of due diligence;

        b.    has been transferred, sold to, or deposited with, a third party;

        c.    has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853, made applicable by Title 18, United States Code Section 982(b)(1).

*[signature]*
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

ALLAN MEDINA
ACTING DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

By: *[signature]*
SARA CLINGAN
CATHERINE WAGNER
TRIAL ATTORNEYS
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

v.

JOHN AGBI,

_____Defendant._____/

CASE NO._____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division**: (Select One)
___ Miami    ___ Key West
___ FTL      ✓ WPB    ___ FTP

New defendant(s)            Yes ___ No ___
Number of new defendants    ___
Total number of counts      ___

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    No
   List language and/or dialect    _____

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                          (Check only one)

   I    0 to 5 days      ✓            Petty       ___
   II   6 to 10 days     ___          Minor       ___
   III  11 to 20 days    ___          Misdem.     ___
   IV   21 to 60 days    ___          Felony      ✓
   V    61 days and over ___

6. Has this case previously been filed in this District Court?    (Yes or No)    No
   If yes: Judge _____    Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?    (Yes or No)    No
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?    Yes ___    No ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?    Yes ___    No ✓

_____
SARA M. CLINGAN
DOJ TRIAL ATTORNEY
COURT ID NO. A5502508

*Penalty Sheet(s) attached                                    REV 8/13/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**     JOHN AGBI

**Case No:** _____

Count #:   1

  Conspiracy to Commit Health Care Fraud

  Title 18, United States Code, Section 1349

**\*Max Penalty**:   Ten (10) years' imprisonment

Count #:


**\*Max Penalty**:

Count #:


**\*Max Penalty**:

Count #:


**\*Max Penalty**:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| John Agbi, | ) | |
| *Defendant* | ) | |

**WAIVER OF AN INDICTMENT**

    I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

    After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

**BRIAN RAFFERTY, ESQ.**
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*