UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-80170-CR-ALTMAN/BRANNON

UNITED STATES OF AMERICA

v.

JOHN AGBI,

         Defendant.

_____/

**SENTENCING MEMORANDUM
ON BEHALF OF DEFENDANT JOHN AGBI**

Defendant John Agbi, by and through undersigned counsel, respectfully submits this Sentencing Memorandum in advance of Dr. Agbi's sentencing.

## I.      PRELIMINARY STATEMENT

On November 4, 2019, Dr. Agbi pled guilty to a one-count Information, which charged him with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349. The Presentence Report ("PSR") concludes that the applicable Sentencing Guideline range in this case is 78 to 97 months imprisonment, based on a total offense level of 28. The PSR calculated Dr. Agbi's offense level pursuant to U.S.S.G. § 2B1.1.

Pursuant to 18 U.S.C. § 3553(a), and based on discussions with the government and government agents, as well as statements made on and off the record, Dr. Agbi intends on asking the Court for a non-custodial sentence of probation. Dr. Agbi promptly admitted wrongdoing, provided substantial assistance to the government, and saved significant judicial resources by pleading guilty. Dr. Agbi has no criminal history, has three minor daughters who live with him and he supports, and serves as a valuable leader in his community. Dr. Agbi respectfully submits

that an evaluation of the § 3553(a) factors, coupled with his substantial cooperation, support a sentence of probation.

## II. A BELOW-GUIDELINES SENTENCE IS WARRANTED IN LIGHT OF THE 3553(a) FACTORS

As the Court is aware, sentencing involves two steps: "(1) the district court must first correctly calculate the advisory guidelines range, and (2) the district court must then consider the § 3553(a) factors in arriving at a reasonable sentence." *United States v. Hoffman*, 710 F.3d 1228, 1233 (11th Cir. 2013). Once the Court has properly calculated the advisory guidelines range—in this case, 78 to 97 months based on a total offense level of 28[1]—the Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth in 18 U.S.C. § 3553(a).

Pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and *Gall v. United States*, 552 U.S. 38, 49 (2007), the Guidelines are no longer mandatory or "the only consideration" at sentencing. Rather, they are "the starting point" for the Court to consider, along with all of the 3553(a) factors. *Gall*, 552 U.S. at 49. "In so doing, [the Court] may not presume that the Guidelines range is reasonable. [The Court] must make an individualized assessment based on the facts presented." *Id.* at 50. *See also Nelson v. United States*, 555 U.S. 350, 352 (2009) ("The guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."). Accordingly, if the Court finds that based on an analysis of the § 3553(a) factors, that a sentence within the Guidelines range does not adequately serve the purposes of sentencing as set forth in the statute, it must impose a sentence that does. Dr. Agbi respectfully submits that

---

[1] As referenced in his contemporaneously filed objection to the PSR, Dr. Agbi calculates the appropriate total offense level to be 26, not 28, arguing that the sophisticated means enhancement is inapplicable.

an evaluation of the § 3553(a) factors, as well as consideration of his substantial cooperation, support a sentence below the recommended Guideline range.

### 1.  The History and Characteristics of Dr. Agbi (18 U.S.C. § 3553(a)(1))

The Court should consider "the history and characteristics of the defendant" in determining a "sentence sufficient, but not greater than necessary" to achieve the statutory goals of sentencing. 18 U.S.C. § 3553(a).  In determining a reasonable and appropriate sentence that takes into account the history and characteristics of the defendant, the Court has the authority to also consider any extraordinary family circumstances as a basis for departing from the Guidelines.  *United States v. Johnson*, 964 F.2d 124, 129 (2d Cir. 1992).  While family circumstances *ordinarily* are not relevant in sentencing, they may become so "where it is clearly established that the defendant is a unique source of financial and/or emotional support for a significant number of dependents."  *United States v. Ayala*, 75 F. Supp. 2d 126, 137 (S.D.N.Y 1999).  In such cases, the rationale is not that the defendant's family circumstances decrease his culpability, but that the Court should be "reluctant to wreak extraordinary destruction" on the dependents who rely heavily on the defendant.  *Johnson*, 964 F.2d at 129.

Dr. Agbi was born in Benin, Nigeria, and he and his twin brother Andrew are the youngest of nine siblings.  Dr. Agbi's father passed away when he was approximately four years old. Dr. Agbi grew up very poor, living on barely one meal a day, selling fruits and vegetables with his mother and siblings to support the family.  As a child, Dr. Agbi almost lost his leg following an injury where he was unable to receive proper medical care.  Despite the level of poverty Dr. Agbi was surrounded by as a child, he was resilient – he borrowed books to educate himself and learned to play the piano using a cardboard box.

Dr. Agbi immigrated to the United States, specifically, New York, in 1995.  He became a

naturalized citizen on April 12, 2002.  In 2000, Dr. Agbi received a dual degree in biology and bio

tech at the City University of New York.  In 2005, he received a Doctor of Medicine from the

University of Rochester.  Dr. Agbi practiced medicine, primarily as a hospitalist, until the fall of

2019.  In addition to practicing as a night-shift hospitalist, Dr. Agbi performed traveling work for

Locum Tenens, which consisted of short term contract work primarily in underserved, rural areas.

Dr. Agbi married Sandra Agbi on September 11, 2005, and the couple have three daughters

together: Soriah Agbi (13), Sevenah Agbi (10), and Saliece Agbi (8).  In 2018, Dr. Agbi and Sandra

divorced.  Sandra was suicidal through the divorce process and was diagnosed with acute

psychosis.  Sandra was institutionalized twice and underwent mental health treatment.  During

these time periods, Dr. Agbi took care of their three children on his own.  Because he needed to

be home, Dr. Agbi ceased doing Locum Tenens work.[2]

Currently, Dr. Agbi and Sandra share custody of the children, but Dr. Agbi has ultimate

decision making power regarding their health and education, and is the sole financial provider.

Dr. Agbi pays Sandra $3,000 a month in alimony support and approximately $635 a month in child

support.  While Sandra is educated and has worked previously, she was unemployed for some time

and her current employment status is unknown to Dr. Agbi.

In addition to his work as a physician, Dr. Agbi is fluent in five languages: English, French,

Domari, Ishan, and Ozalla (African languages).  He is a skilled pianist and has his black belt in

Aikido.  Dr. Agbi is also a dedicated member of his community.  While in college, for example,

Dr. Agbi volunteered to tutor the children in his neighborhood so they could pass the entrance

examination for admission to elite public high schools in New York City.  Currently, among other

---

[2] Around this same time period, Dr. Agbi began doing telemedicine work to supplement his lost income from the traveling Locum Tenens work.

things, Dr. Agbi is very involved in his children's school activities—sometimes spending hours each day working with them on homework—and volunteers on Wednesdays at a soup kitchen. Dr. Agbi has no previous criminal history. For a more fulsome look at who Dr. Agbi is as a person, several of his friends and family have written character reference letters, attached to this filing as Exhibit A.

By all accounts, Dr. Agbi has led a remarkable life. Born into poverty in Nigeria, Dr. Agbi immigrated to the United States when he was twenty, put himself through medical school, fathered three children, and worked hard to earn a reputation as a devoted father and hard-working physician who maintained an honest living. While family circumstances *ordinarily* are not relevant in sentencing, Dr. Agbi's family circumstances are not ordinary. For the past 15 years, Dr. Agbi has been his family's primary financial provider and primary emotional support system. Especially in recent years during the divorce and during Sandra's struggles with mental health, Dr. Agbi has been a constant and steadfast support system for his daughters. Any custodial sentence for Dr. Agbi that removes him from providing for his children both financially and emotionally would have a disastrous effect on his family.

### 2. The Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))

18 U.S.C. § 3553(a)(1) directs the Court to consider the "nature and circumstances of the offense" in determining a reasonable sentence. Dr. Agbi has accepted full responsibility for his wrongdoings and involvement in this case. In accepting and taking full responsibility for his actions, Dr. Agbi has cooperated substantially with the government and will continue to do so in any capacity. Without minimizing his wrongdoing, Dr. Agbi was not the leader or organizer of this scheme.

### 3. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote

**Respect for the Law, and Provide Just Punishment (18 U.S.C. § 3553(a)(2)(A))**

As recognized by the court in *United States v. Vigil*, 476 F. Supp. 2d 1231, 1315 (D.N.M. 2007), "when evaluating the justness of . . . punishment for purposes of reaching a reasonable sentence under *United States v. Booker*, it is important to consider all other forms of punishment [the defendant] has already suffered." ([F]inding variance appropriate where defendant was collaterally punished by loss of his employment and reputation, media coverage, and emotional toll of proceeding); *United States v. Samaras*, 390 F. Supp. 2d. 805, 809 (E.D. Wis. 2005) (granting variance in part because defendant lost a good public sector job as a result of conviction).

Although Dr. Agbi's conduct should not be excused or minimized in any way, a sentence of probation in this case is sufficient to provide just punishment.  Indeed, Dr. Agbi, more than anyone else, is acutely aware of the consequences he has already incurred and the pain he has caused himself and his family.  As a result of his actions, Dr. Agbi was terminated from his employer Wellington Regional Medical Center and has to relinquish his medical licenses.  Additionally, Dr. Agbi is responsible jointly and severally for restitution in the amount of $39,423,220 owed to Medicare.  Finally, Dr. Agbi has lost various civil rights and suffered the shame and embarrassment connected with becoming a convicted felon.  The personal, emotional, and professional toll this case has taken on Dr. Agbi cannot be understated.  Punishment has been meted out.

Further, respect for the law can be achieved by having successfully prosecuted Dr. Agbi, while remembering that he accepted responsibility for his conduct and provided assistance to law enforcement authorities—actions which exhibit respect for the law.  After reading a news article related to healthcare fraud and DME telemedicine work in April 2019, Dr. Agbi contacted law enforcement—specifically an OIG agent who had called him in February 2019 with questions

about his telemedicine work—to inquire about concerns he had with the legality of the telemedicine work he was doing.  Instead of essentially hiding from law enforcement and hoping he was never caught, Dr. Agbi *affirmatively* contacted law enforcement *himself*.  From this date forward, Dr. Agbi has been nothing but cooperative and forthcoming with law enforcement, and has never wavered from his commitment to help in any way possible.

Dr. Agbi respectfully submits that a sentence of probation, in addition to the penalties that have already occurred and may occur in the future as a result of his felony conviction, is adequate to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.

### 4.  The Need for the Sentence to Deter Crime and Protect the Public from Further Crimes of the Defendant (18 U.S.C. § 3553(a)(2)(B-C))

Regarding the need to deter criminal conduct, losing his job, relinquishing his medical license, the expense of restitution, the status as a convicted felon, and all other consequences suffered by Dr. Agbi as a result of this action will act as a deterrent message to physicians and other individuals engaged in healthcare fraud.  Serving a custodial sentence will not significantly increase the deterrent effect.

Regarding the need to protect the public from further crimes of the defendant, as noted above, Dr. Agbi has zero criminal history and has had no problem following the directions of the Probation Office while awaiting sentencing. Dr. Agbi has no history or indication of violence, substance abuse, or any other dangerous or unlawful behavior.  Because Dr. Agbi has to relinquish his medical licenses, he will not have the ability to see patients or prescribe medications.  Thus, imprisonment is unnecessary to protect the public from Dr. Agbi and will not serve to advance this goal.

**5.     The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct (18 U.S.C. § 3553(a)(6))**

18 U.S.C. § 3553(a)(6) directs the Court to consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" in determining a reasonable sentence.   In avoiding unwarranted sentence disparities, courts should consider similar cases *nationwide*, not cases limited solely to that court's district or co-defendant in a case.   *See e.g., United States v. Peppel*, 707 F.3d 627, 638 (6th Cir. 2013) (stating "[w]e have previously held that [18 U.S.C. § 3553(a)(6)] refers to national sentencing disparities rather than sentencing disparities among codefendants," and holding that "the district court abused its discretion in imposing a sentence that does not avoid national sentencing disparities.").

Dr. Agbi's prosecution is part of a nationwide federal healthcare fraud takedown related to telemedicine.   In April 2019, 24 individuals were indicted on healthcare fraud charges related to telemedicine.[3]   A few months later in September 2019, almost 50 individuals were indicted on healthcare fraud charges, many of which related to telemedicine.[4]   The underlying allegations against the physicians involved in these cases are essentially the same across the board: the physicians signed up to be providers for telemedicine services, were connected with various platforms, received logins and passwords, reviewed pre-populated charts from their computers,

---

[3] *See Federal Indictments & Law Enforcement Actions in One of the Largest Health Care Fraud Schemes Involving Telemedicine and Durable Medical Equipment Marketing Executives Results in Charges Against 24 Individuals Responsible for Over $1.2 Billion in Losses*, <https://www.justice.gov/opa/pr/federal-indictments-and-law-enforcement-actions-one-largest-health-care-fraud-schemes>.

[4] *See Federal Health Care Fraud Takedown in Northeastern U.S. Results in Charges Against 48 Individuals*, Department of Justice, <https://www.justice.gov/opa/pr/federal-health-care-fraud-takedown-northeastern-us-results-charges-against-48-individuals>.

and clicked approve without meeting or significantly interacting with these patients in order to determine medical necessity.

Numerous physicians and other healthcare related professionals have been charged for the same or similar conduct as Dr. Agbi related to telemedicine, and have pled guilty to less severe charges.   In the Southern District of Georgia alone, at least eleven individuals have been charged and pled guilty to a violation of 18 U.S.C. § 371 for conspiracy to violate 18 U.S.C. § 1952(a)(3). *See United States v. Bagley*, Case No. 4:19-cr-167; *United States v. Efthimiou*, Case No. 4:19-cr-156; *United States v. Folden*, Case No. 4:19-cr-165; *United States v. Frey*, Case No. 4:19-cr-157; *United States v. Green*, Case No. 4:19-cr-163; *United States v. Kadam*, Case No. 4:19-cr-162; *United States v. Rivera*, Case No. 4:19-cr-161; *United States v. Salim*, Case No. 4:19-cr-160; *United States v. Soriano*, Case No. 4:19-cr-159; and *United States v. Steinkohl*, et al., Case No. 4:19-cr-158.

In these plea agreements—which reflect the same or very similar conduct that Dr. Agbi was charged with—the government not only agreed to let the defendants plead guilty to § 371 which has a maximum sentence of five years, but also agreed to recommend to the Court and U.S. Probation that Section 2B4.1 apply for purposes of the Guideline calculations.  This effectively limits any enhancements to the amount of money the defendant made through the unlawful scheme, $150,000 in Dr. Agbi's case, removing the enhancements that typically apply to healthcare fraud cases (including total loss amount, abuse of a position of trust, and sophisticated means).  Given the similarity of these cases to Dr. Agbi's case, counsel for Dr. Agbi asked the government for a similar plea agreement in this case, but that request was denied.

If the government in this case had allowed Dr. Agbi to plead to the same violations these other defendants were charged with, he would be facing a drastically less severe punishment.

Instead of a total offense level of 28, Dr. Agbi would be facing a base offense level of 8, which would be increased only by a total of 8 based on the amount Dr. Agbi *made* (not the amount billed) through the unlawful scheme ($150,000) (*See* the loss amount table in §2B1.1).  With a 3 point reduction for acceptance of responsibility, Dr. Agbi's total offense level would be 13, with a guideline range of 12 to 18 months and within the range eligible for probation.  With a further reduction for the substantial assistance Dr. Agbi has provided the government—a motion for which has not been filed but Dr. Agbi understand the government plans on asking for a 50% reduction— his guideline range would fall squarely within Zone A eligible for probation and with a guideline range of 0 to 6 months.   But because Dr. Agbi is in a different district where he is being prosecuted by the Criminal Fraud Section, he is facing a term of imprisonment of 78 to 97 months.

The entire purpose of the Sentencing Guidelines is to ensure that similarly situated defendants are treated the same and to prevent unwarranted sentencing disparities.   If Dr. Agbi is sentenced at or near the guidelines range of 78 to 97 months, while defendants who engaged in the same conduct but are being prosecuted by another district will in all likelihood receive a sentence of probation, an extreme sentencing disparity and injustice to Dr. Agbi will occur.   Dr. Agbi asks that the Court consider this sentencing disparity in determining his appropriate sentence.

### III.    CONCLUSION

Given the § 3553(a) factors discussed above and Dr. Agbi's substantial assistance to the government in this investigation, a felony conviction, loss of medical licensure, and sentence of probation appropriately balances the need for deterrence and punishment in this case with compassion and leniency for Dr. Agbi.

Respectfully submitted this 13th day of January, 2020.

 *s/ J. Everett Wilson*

J. Everett Wilson
Florida Bar No. 841625
everett.wilson@polsinelli.com
POLSINELLI PC
1111 Brickell Avenue, Suite 2800
Miami, FL 33131
Telephone: (305) 921-1800

Brian Rafferty (*Pro Hac Vice*)
brafferty@polsinelli.com
Paige Ayres Nutini (*Pro Hac Vice*)
pnutini@polsinelli.com
POLSINELLI PC
1201 West Peachtree Street NW, Suite 1100
Atlanta, GA 30309
Telephone: (404) 253-6000

*Counsel for John Agbi*

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-80170-CR-ALTMAN/BRANNON**

**UNITED STATES OF AMERICA**

**v.**

**JOHN AGBI,**

            **Defendant.**

_____/

**<u>CERTIFICATE OF SERVICE</u>**

    I HEREBY CERTIFY that on January 13, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send electronic notification upon all counsel of record.

                                        <u>*s/ J. Everett Wilson*</u>
                                        J. Everett Wilson

                                        *Counsel for John Agbi*